## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
*ex rel.* DALISA BELL
           Plaintiff,

vs.                                           No.  CV 01-1248 MV/KBM

ALI M. GHAFFARI, M.D., Individually,
LINDA ROSE GHAFFARI, Individually,
BUENA VISTA RETIREMENT CENTER,
INC., ALI M. GHAFFARI, SR., M.D., P.A.,
a New Mexico for profit corporation, and
BUENA VISTA HEALTH CARE
SERVICES, INC., a New Mexico for profit
corporation,

                Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Joint Motion to Dismiss

Relator's Complaint, filed June 7, 2006 [**Doc. No. 38**].  The Court, having considered the motion,

briefs, relevant law and being otherwise fully informed, finds that Defendants' motion will be

**GRANTED in part and DENIED in part**.

### PROCEDURAL BACKGROUND

On November 2, 2001, Relator Bell filed a complaint ("Complaint") pursuant to the qui

tam provision of the False Claims Act, 31 U.S.C. § 3729 et seq., against Dr. Ali M. Ghaffari

("Defendant Ali Ghaffari"), Linda Rose Ghaffari (Defendant Linda Ghaffari), Buena Vista

Retirement Center, Inc. ("Defendant Buena Vista"), Buena Vista Health Care Services, Inc.

("Defendant Buena Vista Health Care") and Ali M. Ghaffari, Sr., M.D., P.A. ("Defendant

Ghaffari P.A.").  Relator Bell's claims allegedly arise from Defendants' provision of health care

services to nursing home residents.  On April 4, 2006, the United States filed a Complaint in

Intervention, in which it intervened as to some claims in Relator Bell's complaint. Relator Bell

filed an Amended Complaint on May 4, 2006 ("Amended Complaint").  On June 7, 2006,

Defendants filed the instant Joint Motion to Dismiss Relator Bell's Amended Complaint ("Motion

to Dismiss").

## FACTUAL BACKGROUND[1]

Defendant Buena Vista is a nursing home in New Mexico.  It is owned and operated by

Defendant Ali Ghaffari and his wife Linda Ghaffari, who are officers and directors of Defendant

Buena Vista.   Defendant Buena Vista Health Care was created by Defendant Ali Ghaffari to

provide medical treatment to residents of Defendant Buena Vista.  Defendants Ali and Linda

Ghaffari also own Defendant Ghaffari P.A., which provides health care services at its facility, and

is located at a different location than Defendants Buena Vista and Buena Vista Health Care.

Between October of 1999 and July 23, 2000, Relator Bell was employed by Defendants

Ali Ghaffari and Ghaffari P.A.  Relator Bell states that Defendant Ali Ghaffari informed her that

her title would be that of "Physical Therapist" and that she would be performing physical therapy

on patients referred to her by Defendants Ali Ghaffari and Buena Vista.  According to Relator

Bell, she informed Defendant Ali Ghaffari that she was not licensed as a physical therapist and

was only licensed to administer therapeutic massages.

---

[1]On a motion to dismiss, a court must assume as true all well-pleaded facts, and must draw
all reasonable inferences in favor of the plaintiff.  Consequently, the factual background recites the
facts as alleged in Relator Bell's Amended Complaint.

## ANALYSIS

Relator Bell alleges that all of the Defendants provided health care services to nursing home residents whose medical expenses were paid for by federally funded Medicare and Medicaid programs; thus, they provided services on behalf of the United States government.  She further alleges that Defendants billed and received money from federally funded Medicare and Medicaid programs in payment for those services.  These activities led to the claims in Relator Bell's Amended Complaint.  Specifically, in Count I of her Amended Complaint, Relator Bell alleges that Defendants Ghaffari P.A., Ali Ghaffari and Linda Ghaffari made false claims by submitting claims for reimbursement to Medicare and Medicaid for physical therapy performed by Relator Bell, even though these Defendants knew she was not a licensed physical therapist.[2]  Relator Bell asserts that the physical therapy treatments at issue had to be administered by a licensed physical therapist to be eligible for reimbursement under Medicare and Medicaid.

In Count II of her Amended Complaint, Relator Bell alleges that Defendants Buena Vista and Buena Vista Health Care billed Medicare and Medicaid for social worker services even though they did not employ or contract with a licensed social worker.[3]  Relator Bell claims that the social worker services that Defendants Buena Vista and Buena Vista Health Care billed for had to be performed by licensed social workers in order to be reimbursable under Medicare or Medicaid.

---

[2]The United States declined intervention as to Count I.

[3]The United States partially intervened in Count II as to Defendant Buena Vista, but declined intervention as to Defendant Buena Vista Health Care.

Finally, in Count III of her Amended Complaint, Relator Bell alleges that Defendants failed to meet recognized standards of healthcare.[4]  Relator Bell alleges that health care providers are prohibited from submitting claims under Medicaid and Medicare for services that are of a quality which fails to meet professionally recognized standards of health care.

Defendants have moved to dismiss all three counts of Relator Bell's Amended Complaint. Defendants argue that all three counts should be dismissed because they fail to plead fraud with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.  In addition, Defendants assert that this Court does not have subject matter jurisdiction over Counts II and III of the Amended Complaint and that Count II should be dismissed for failure to state a claim. Defendants also argue that some of Relator Bell's claims are barred by the statute of limitations.

The Court will begin by determining whether it has jurisdiction over Counts II and III of the Amended Complaint.  Once the Court determines that it does have jurisdiction, it can then address whether Count II should be dismissed for failure to state a claim.  Next, the Court will examine all three counts to determine whether they have been pled with the required specificity. Finally, the Court will examine any claims that have not been dismissed to determine whether they are barred by the statute of limitations.

## I.      Jurisdiction Over Counts II and III of Relator Bell's Amended Complaint

Defendants argue that this Court lacks subject matter jurisdiction over Counts II and III of Relator Bell's Amended Complaint.  In an action under the False Claims Act ("FCA"), this Court's jurisdiction is governed by 31 U.S.C. § 3730(e)(4)(A), which provides:

---

[4]The United States intervened in Count III, except as it applies to Defendant Buena Vista Health Care.

No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

As a preliminary matter, this Court must address what standard to apply in considering Defendants' motion to dismiss Counts II and III for lack of subject matter jurisdiction. Although Rule 12(b)(1) of the Federal Rules of Civil Procedure normally applies to a challenge for lack of subject matter jurisdiction, "a court is required to convert a 12(b)(1) motion to dismiss into a 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependant on the same statute which provides the substantive claims in the case." *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir.2000). In a qui tam suit brought under the FCA, the "court's subject matter jurisdiction depends upon the same statute that creates the substantive claims, [thus] the jurisdictional inquiry is necessarily intertwined with the merits." *See United States ex rel. Holmes v. Consumer Ins. Group*, 318 F.3d 1199, 1203 (10th Cir. 2003). However, "[w]hen a court relies on affidavits and other evidentiary material submitted by the parties to resolve disputed jurisdictional facts, a defendant's motion to dismiss should be treated as one for summary judgment under Rule 56(c)." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 717 (10th Cir. 2006).

In the present case, the Court relied on affidavits and other documentary evidence submitted by Relator Bell to determine whether the claims alleged in Count II and III of Relator

Bell's complaint should be dismissed for lack of subject matter jurisdiction;[5] therefore, the Court analyzes this portion of Defendants' motion under the summary judgment standard of Rule 56(c).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted).  Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond

---

[5]The Court also took judicial notice of *Epifano Tafoya et al. v. Buena Vista Retirement Center, et al.*, No. D-0905-CV-0200000453 **(Ninth Judicial District Court, State of New Mexico) ("*Tafoya*")** and *Montoya v. Buena Vista Retirement Center*, **No. D-0905-CV-0200400202 (Ninth Judicial District Court, New Mexico, 2004)**.  However, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

Having determined the appropriate standard, the Court now turns to the substance of Defendants' FCA jurisdiction argument. "Application of the 31 U.S.C. § 3730(e)(4) jurisdictional bar requires a four-step inquiry: (1) whether the alleged 'public disclosure' contains allegations or transactions from one of the listed sources; (2) whether the alleged disclosure has been made 'public' within the meaning of the False Claims Act; (3) whether the relator's complaint is 'based upon' this public disclosure; and, if so, (4) whether the relator qualifies as an 'original source.'" *Kennard v. Comstock Resources, Inc.*, 363 F.3d 1039, 1042 (10th Cir. 2004) (quotations omitted).

In the present case, there are at least two previous civil actions that may qualify as public disclosures. The first is *Epifano Tafoya et al. v. Buena Vista Retirement Center, et al.*, No. D-0905-CV-0200000453 (Ninth Judicial District Court, State of New Mexico) ("*Tafoya*") and the second is *Montoya v. Buena Vista Retirement Center*, No. D-0905-CV-0200400202 (Ninth Judicial District Court, New Mexico 2004) ("*Buena Vista Receivership*").[6]

_____

[6]Defendants, in their Motion to Dismiss, reference the *Tafoya* complaint as a potential "public disclosure;" however, they do not reference the *Buena Vista Receivership*. **The *Buena Vista Receivership*** was brought to the Court's attention through reference in the government's

Relator Bell's present counsel were the attorneys in *Tafoya*, a suit filed against Buena

Vista Retirement Center, Inc., Ali M. Ghaffari and Linda Ghaffari in state district court on

December 19, 2000.  This action was captioned *Epifano Tafoya et al. v. Buena Vista Retirement*

*Center, et al.* and was brought by Plaintiffs Epifano Tafoya and Linda Garcia in their individual

capacity and as legal guardians of Josie Tafoya, a former resident of Buena Vista Retirement

Center, Inc.  The *Tafoya* lawsuit alleged that the Omnibus Reconciliation Act of 1987 ("OBRA"),

and numerous federal regulations from 42 C.F.R. Part 483, established standards of care for

Buena Vista.  The lawsuit alleged that Defendants violated these requirements by providing

inadequate nursing staff, falsifying records, and not preventing infections and that Defendants did

not exercise ordinary care in preventing falls, dehydration, pressure sores, and in administering

medication.  The Plaintiff's allegations were not limited to Jose Tafoya, but alleged that "Buena

Vista and other named Defendants, established a pattern of neglect and intentional conduct in the

care of residents that have been the subject of repeated investigations and claims by the State of

New Mexico."  *Tafoya* Complaint for Damages ¶ 29 (attached as Ex. A to Reply Br. in Support

of Motion to Dismiss **[Doc. No. 47]**).

In the *Buena Vista Receivership*, Patricia Montoya, in her official capacity as the

---

Complaint in Intervention.  Even though Defendants did not raise the receivership action as a
potential basis for a jurisdictional bar, this Court has "'an independent obligation to determine
whether subject-matter jurisdiction exists, even in the absence of a challenge from any party' and
thus a court may sua sponte  raise the question of whether there is subject matter jurisdiction . . .
.'" *Image Software, Inc. v. Reynolds and Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006)
(quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006).  The Defendants also reference another
receivership action, *Valdez v. Buena Vista Nursing Center*, No. D-0101-CV-9900542 (First
Judicial District Court, New Mexico 1999).  This action may also qualify as a public disclosure if
the Defendants establish that "Buena Vista Nursing Center" is the same entity as either Defendant
Buena Vista or Defendant Buena Vista Health Care.  For the purposes of the Court's present
decision, it is not critical that Defendants have not established such a relationship at this juncture.

Secretary of the New Mexico Department of Health, filed a petition seeking appointment as receiver of Buena Vista Retirement Center.  In New Mexico, the Health Facility Receivership Act grants the Secretary of Health the authority to file a petition seeking appointment as receiver of a health facility if the facility "presents a situation, physical condition, practice or method of operation that the secretary finds presents an imminent danger of death or significant mental or physical harm to its residents or other persons."  N.M. Stat. § 24-1E-3(A)(4).  After trial, the presiding judge held that Ms. Montoya met her burden of proving the existence of a situation, physical condition, practice or method of operation that the secretary finds presents an imminent danger of death or significant mental or physical harm to its residents or other persons.  *See* Findings of Facts and Conclusions of Law, No. D-0905-CV-0200400202, Conclusions of Law ¶ 5 (Ninth Judicial District Court, State of New Mexico 2004) ("*Buena Vista Receivership* Opinion") (attached to Notice of United States' Response to Order Regarding Supplemental Information **[Doc. No. 50]**). Some of the more pertinent Findings of Fact from the *Buena Vista Receivership* Opinion are set forth as follows:

- "Buena Vista has demonstrated a pattern and practice of substandard care over years of noncompliance with state and federal regulations and has failed to correct these deficiencies." *Buena Vista Receivership* Op., Findings of Fact ¶ 3.

- "Among other conditions deemed to be substandard, the complaints include the discovery that . . . the roof was leaking which resulted in toxic black mold throughout the facility and that the facility runs out of food." *Id*. at ¶ 4.

- "The facility . . . had failed to comply with required Medicaid audits and had not received Medicaid reimbursement from the state since November 2003 because of non compliance." *Id*. at ¶ 5.

- "Maintenance of Buena Vista Retirement Center's provider number, which enables the facility to bill for reimbursable Medicaid and Medicare services,

was in jeopardy of termination." *Id*. at ¶ 6.

- "In May 2004, the state of finance and operations threatened the cessation of provision of services to residents who are frail and vulnerable to harm." *Id*. at ¶ 7.

- "The current state of operations of Buena Vista, its history and pattern of substandard care and its financial insolvency constituted a situation, physical condition, practice and method of operations that presented an imminent danger of death or significant mental or physical harm to its residents." *Id*. at ¶ 10.

- "[T]he facility was filthy.   Residents and families complained about cockroaches throughout the facility." *Id*. at ¶ 18.

- "[T]he floors throughout the facility were filthy, and there were no cleaning supplies on the premises." *Id*. at ¶ 29.

- "Resident rooms were not clean.  Mattresses had to be removed to clean bed frames, which were sticky and dirty." *Id*. at ¶ 22.

- "The kitchen was very dirty and infested with cockroaches." *Id*. at ¶ 23.

- "There was pervasive growth of toxic black mold in several locations throughout the Buena Vista facility." *Id*. at ¶ 27.

- "There were limited accounting and bookkeeping records at the facility.  The few existing balance sheets and income statements were incomplete and inaccurate." *Id*. at ¶ 36.

Having identified at least two previous civil actions that may qualify as public disclosures, the Court now examines whether either of these previous suits constitute a jurisdictional bar to Counts II and III of Relator Bell's Amended Complaint.

1.      **Do the Alleged Public Disclosures Contains Allegations or Transactions From One of the Listed Sources?**

The term "listed source" refers to one of the sources listed in 31 U.S.C. § 3730(e)(4)(A).

*See Kennard*, 363 F.3d at 1042.  Those sources include "allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media."  31 U.S.C. § 3730(e)(4)(A).  The Tenth Circuit has "repeatedly held that prior civil actions are public disclosures under the FCA."  *Id*.  Therefore, the civil actions in *Tafoya* and the *Buena Vista Receivership* are appropriately characterized as coming from a listed source, thus satisfying the first prong of the jurisdiction inquiry.

**2.      Have the Alleged Disclosures Been Made Public Within the Meaning of the FCA?**

The Tenth Circuit has held that "[o]nce a complaint is filed, a civil action has commenced and public disclosure has occurred."  *Id*.  Therefore, once complaints were filed in *Tafoya* and the *Buena Vista Receivership*, public disclosure occurred within the meaning of the FCA.

**3.      Is the Relator's Complaint "Based Upon" Public Disclosures?**

Having determined that the first two prongs of the inquiry are satisfied, the Court must now address whether Relator Bell's complaint is "based upon" the public disclosures in *Tafoya* and/or the *Buena Vista Receivership*.  This inquiry helps to find "the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own."  *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 571 (10th Cir. 1995) (quotations omitted).  Where previous public disclosures are sufficient "to set the government squarely on the trail of the alleged fraud" a district court should not exercise jurisdiction over a qui tam claim.  *Id*.

11

To this end, the Tenth Circuit applies a "restrictive interpretation of the threshold 'based upon' test . . . ." *United States ex rel. Precision Co. v. Koch Industries, Inc.*, 971 F.2d 548, 552 (10th Cir. 1992). Specifically, the test for this prong "is whether 'substantial identity' exists between the publicly disclosed allegations and the qui tam complaint." *United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1051 (10th Cir. 2004). The quit tam action need not be based entirely on the public disclosure, rather, under Tenth Circuit law, the FCA can bar a qui tam action that is only partly based upon publicly disclosed allegations or transactions. *Precision*, 971 F.2d at 552. The Tenth Circuit explains that this restrictive approach "is consistent with the goal of Congress in the False Claims Act to encourage those with knowledge of fraud to come forward" while recognizing that "where public disclosure of the fraud has already occurred, no incentive for a private qui tam suit is needed." *United States ex rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538, 1546 (10th Cir. 1996).

In Count II of her Amended Complaint, Relator Bell alleges that in order for Defendants' services to be eligible for reimbursement under Medicare and Medicaid, those services were required to be provided by licensed social workers. Relator Bell alleges that Defendants committed fraud by failing to employ or contract with a licensed social worker and submitting claims to Medicare and Medicaid despite this failure.

The Tenth Circuit has held that when a relator's allegations are substantially identical to those set forth in a public disclosure, then those allegations are deemed to be based on the public disclosure, even though the relator's allegations may be **"more narrow and specific in scope**." *Id.* at 1547 (emphasis added). Such is the case here; although more narrow and specific in scope, Relator Bell's allegations are substantially identical to Plaintiffs' allegations in *Tafoya* and the

12

findings of fact set forth in the *Buena Vista Receivership*.

In *Tafoya*, the Plaintiffs alleged broadly that Buena Vista Retirement Center, Inc. committed fraud by failing to provide adequate staff to deal with Buena Vista Retirement Center, Inc. residents. *Tafoya* Complaint for Damages ¶ 22B. *See also*, *Tafoya* Complaint for Damages ¶ 18A (alleging that Buena Vista Retirement Center, Inc. failed to provide adequate licensed nursing personnel, physical therapists, recreational therapists and other adequate staff to deal with Tafoya and other residents).

While the Court recognizes that Relator Bell alleges that fraud was committed through the submission of false claims to Medicare and Medicaid and the *Tafoya* Plaintiffs alleged that the fraud arose from misrepresentations the Defendants made to Plaintiffs, the transactions giving rise to the fraud in each case are the same; namely the failure to provide adequate staff and misrepresentations based on that failure. As previously noted, under Tenth Circuit law, the FCA bars any qui tam action that is even partly based upon the publicly disclosed allegations or transactions. *Precision*, 971 F.2d at 552.

Turning to the *Buena Vista Receivership*, although that suit was not based in an action for fraud, the court did find that Buena Vista, through a pattern and practice of substandard care, failed to comply with state and federal regulations and that the accounting and bookkeeping records of Buena Vista were incomplete and inaccurate. *See Buena Vista Receivership* Op. at ¶¶ 3, 36. As previously noted, under Tenth Circuit law, the FCA bars any qui tam action that is even partly based upon the publicly disclosed allegations or transactions. *Precision*, 971 F.2d at 552.

Having considered *Tafoya* and the *Buena Vista Receivership*, the Court finds that Count II of Relator Bell's complaint is based upon public disclosures. The Court now addresses whether

Count III is based upon public disclosures.

In Count III of her amended complaint, Relator Bell alleges that Defendants failed to provide minimally adequate care to their patients, thus, failing to meet professionally recognized standards of health care for patients. Relator Bell's Amended Complaint ¶ 42. Relator Bell goes on to allege that despite these failures, Defendants submitted claims to Medicare and Medicaid based on misrepresentations that minimum standards of care had been met. Relator Bell's Amended Complaint ¶ 44.

Again, Relator Bell's claims are substantially identical to those set forth in public disclosures. As previously discussed, both Relator Bell's Amended Complaint and the *Tafoya* complaint allege that Defendants failed to provide adequate staff to care for residents. Relator Bell's Amended Complaint ¶ 46; *Tafoya* Complaint for Damages ¶ 22B.

Relator Bell also alleges generally that Defendants failed to provide minimum adequate care to residents. The *Buena Vista Receivership* had already found that "Buena Vista has demonstrated a pattern and practice of substandard care over years of noncompliance with state and federal regulations and has failed to correct these deficiencies." *Buena Vista Receivership* Op., Findings of Fact ¶ 3. The court in the *Buena Vista Receivership* also found that "[t]he current state of operations of Buena Vista, its history and pattern of substandard care and its financial insolvency constituted a situation, physical condition, practice and method of operations that presented an imminent danger of death or significant mental or physical harm to its residents." *Id*. at ¶ 10. Likewise, the *Tafoya* complaint alleged that "Buena Vista and the other named Defendants, established a pattern of negligent and intentional conduct in the care of residents that have been the subject of repeated investigations and claims by the State of New

14

Mexico." *Tafoya* Complaint for Damages ¶ 29.

Although Relator Bell, in support of her claim that Defendant failed to provide minimum care, also made some allegations that were "more narrow and specific in scope" than those set forth in *Tafoya* or the *Buena Vista Receivership*, as previously noted, when a relator's allegations are substantially identical to those set forth in a public disclosure, then those allegations are deemed to be based on the public disclosure, even though the relator's allegations may be **"more narrow and specific in scope**." *MK-Ferguson*, 99 F.3d at 1547 (emphasis added). Also, as previously discussed, although Relator Bell alleges that fraud was committed through the submission of false claims to Medicare and Medicaid and the *Tafoya* Plaintiffs alleged that the fraud arose from misrepresentations the Defendants made to Plaintiffs, the transactions giving rise to the fraud in each case are the same; namely the failure to provide adequate staff and misrepresentations based on that failure. And, although the receivership action did not specifically allege fraud, it did find that the accounting and bookkeeping records of Buena Vista were incomplete and inaccurate and that "[t]he facility . . . had failed to comply with required Medicaid audits and had not received Medicaid reimbursement from the state since November 2003 because of non compliance." *Buena Vista Receivership* Op., Findings of Fact ¶¶ 5, 36. As already noted, under Tenth Circuit law, the FCA bars any qui tam action that is even partly based upon the publicly disclosed allegations or transactions. *Precision*, 971 F.2d at 552.

After comparison of the claims in the present case, *Tafoya* and the *Buena Vista Receivership*, I find that the *Tafoya* litigation and the *Buena Vista Receivership* set forth sufficient information "to set the government squarely on the trail of the alleged fraud" and therefore, this Court should not exercise jurisdiction over Relator Bell's claims in Counts II and III, unless it is

determined that she is an original source.  *See Sandia*, 70 F.3d at 571.

### 4.       Does Relator Bell qualify as an "original source"?

"The last inquiry, whether the relator is an original source, is necessary only if the answer to each of the first three questions is 'yes,' indicating the relator's complaint is based upon a specified public disclosure." *Holmes*, 318 F.3d at 1203 (10th Cir. 2003).

To show that she is an original source, Relator Bell must satisfy two requirements.  First, she must show that she "ha[s] direct and independent knowledge of the information on which the allegations are based . . . Direct knowledge is knowledge gained by the relator's own efforts and not acquired from the labors of others." *Grynberg*, 389 F.3d at 1052 (quotations omitted). Second, she must show that she "voluntarily provided the information to the Government prior to filing suit." *Id.*

Defendant provided evidence sufficient to survive summary judgment as to the second requirement through her affidavit, dated June 21, 2006, in which she states that, prior to filing her Complaint, she voluntarily met with government agents and provided them with the relevant information she had in her possession.  *See* Aff. of Dalisa Bell Wright, dated June 21, 2006 ("2006 Affidavit").  However, the issue remains whether Relator Bell has met the first requirement and shown that she is a direct and independent source of the information on which her allegations are based.

Relator Bell bears the burden of showing that she is an original source.  *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 800-02 (10th Cir.2002).  "To meet this burden, [s]he must provide more than an 'unsupported, conclusory allegation.'"  *Grynberg*, 389 F.3d at

1052. She "is required to iterate specific facts demonstrating [her] direct and independent knowledge is marked by the absence of an intervening agency and unmediated by anything but her own labor." *Id.* at 1052-53.

Generally, in ascertaining the facts necessary to establish jurisdiction, the court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by the defendant's affidavits" or any other evidence properly before the Court. *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1376 (10th Cir.1989); *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495 (10th Cir. 1995). However, when a defendant challenges a complaint's jurisdictional allegations, "[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *New Mexicans for Bill Richardson*, 64 F.3d at 1499.

In the present case, Defendants offer the *Tafoya* complaint as evidence that Relator Bell is not an original source. To satisfy her burden of alleging facts essential to show jurisdiction, Relator Bell must now set forth affidavits or some other evidence setting forth "specific facts demonstrating [her] direct and independent knowledge is marked by the absence of an intervening agency and unmediated by anything but her own labor." *Grynberg*, 389 F.3d at 1052-53.

A.    Is Relator Bell an Original Source as to Count II of Her Complaint?

In Count II of her Complaint, Relator Bell alleges that Defendants committed fraud by failing to employ or contract with a licensed social worker and submitting claims to Medicare and Medicaid despite this failure. As previously discussed, there were already public disclosures that Defendants failed  to provide adequate staff to deal with Buena Vista Retirement Center, Inc.

17

residents; therefore, Relator Bell is required to set forth specific facts demonstrating her direct and independent knowledge of the facts underlying this allegation.

In an affidavit, Relator Bell avers that, based upon her personal knowledge, "[a]t no time during the term of my employment did Dr. Ali Ghaffari or Buena Vista Retirement Center employ or have a contract with a licensed social worker.  Instead, all of the social worker services administered to residents of Buena Vista Retirement Center were administered by an unlicensed individual by the name of Betty Albright."  Aff. of Dalisa Bell Wright, dated March 15, 2007 ("2007 Affidavit"), ¶ 36.

The court finds that this statement in Relator Bell's affidavit is enough to show that, for purposes of summary judgment, there is a genuine issue of material fact.  Specifically, the material fact being that Relator Bell is an original source of the information she used to support her allegations that Defendants committed fraud by failing to employ or contract with a licensed social worker and submitting claims to Medicare and Medicaid despite this failure, during the time that Relator Bell was employed by Defendants.

Relator Bell, in her affidavit, also states that "[u]pon information and belief Buena Vista Retirement Center and Dr. Ghaffari did not employ or contract with any licensed social workers to administer such services to the residents of the Buena Vista Retirement Center at any time since the mid 1980's."  2007 Aff., ¶ 37.  In this instance, Relator Bell does not assert that she has direct and independent knowledge of this allegation; rather, she bases her allegation on "information and belief."  Therefore, Relator Bell has not presented sufficient evidence to establish a genuine issue that she was an original source for her allegation that Defendants did not employ sufficient licensed social workers at any time since the mid 1980's.  The exception to this

18

is the time when she was employed by Defendants, as addressed in the preceding paragraph.

       B.      <u>Is Relator Bell and Original Source as to Count III of Her Complaint</u>?

In Count III of her amended complaint, Relator Bell alleges that Defendants failed to provide minimally adequate care to their patients and submitted claims to Medicare and Medicaid for nursing home services provided to these patients. Under Tenth Circuit law, a relator does not need to be an independent source regarding the actual fraudulent submission to the Government. *Praxair*, 389 F.3d at 1053. Rather, "A relator 'need only possess "direct and independent knowledge of the information on which the allegations are based."  *Id*.

In this case, the information on which the allegations of fraud are based is the failure to provide minimally adequate care to patients. As set forth previously, before Relator Bell filed suit in the instant matter, there had already been public disclosures that Defendants established a pattern of negligent and intentional conduct in the care of residents. Relator Bell has set forth facts establishing that she is an independent source despite these prior public disclosures. In her affidavit, she describes specific instances of neglect that she observed and named specific patients. For instance she describes how when she was providing massage therapy to Buena Vista residents she noticed that they "appeared to suffer from a number of obvious hygiene and health conditions. Most of the patients were obviously dehydrated, and had not been bathed for a prolonged periods of time . . . and were bruised and scratched." 2007 Aff., ¶ 27. She also states that residents "generally had a strong body odor with lengthy fingernails, both on their hands and toes, facial hair on the women, and often had cuts, bruises or scrapes on their physical body." *Id*. at ¶ 29. These assertions along with other assertions in Relator Bell's affidavit establish a genuine issue as to whether she is an original source as to the facts underlying her allegations in Count III, at least

as to the allegations encompassed within the time of her employment.  However, to the extent

Count III alleges that Defendant failed to provide adequate care during times that Relator Bell

was not employed by Defendants, she has failed to establish evidence to support that she is an

independent source for allegations during those time periods.

Therefore, because Relator Bell can only establish that she is an original source for

conduct that occurred during her employment, this Court only has jurisdiction over Counts II and

III of Relator Bell's Complaint to the extent that these Counts sets forth allegations of activity

that occurred during the time of her employment.  Summary judgement shall enter against Relator

Bell and in favor of Defendants as to the balance of the allegations in Counts II and III, which the

Court does not have jurisdiction to consider.

II.      **Should Count II be dismissed for failure to state a claim?**

Even if this Court did have jurisdiction over all of Count II and it survived summary

judgement in its entirety, Count II must still be dismissed for failure to state a claim.  Defendants

argue that Count II of Relator Bell's amended complaint should be dismissed because it fails to

state a claim upon which relief may be granted.  A court may not dismiss a cause of action under

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts supporting his/her claim that would entitle

him/her to relief.  *H.J. Inc. v. Northwestern Bell Tel. Co*., 492 U.S. 229, 249-50 (1989).   In

considering a Rule 12(b)(6) motion, the court must assume as true all well-pleaded facts, and

must draw all reasonable inferences in favor of the plaintiff.  *Housing Auth. of the Kaw Tribe v.*
*City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991).  The issue in reviewing the sufficiency

of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his/her claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that [he/she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

In Count II of her complaint, Relator Bell alleges that Defendants made false claims by billing Medicare and Medicaid for social worker services that were required to be provided by licensed social workers even though Defendant had not employed or contracted with any licensed social workers. Defendants respond that there was no requirement that Defendants provide social services by a licensed social worker.

The implementing regulations of the Medicare Act provide that long term care facilities "must provide medically-related **social services** to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident." 42 C.F.R. § 483.15(g)(1) (emphasis added). The regulations also provide that "[a] facility with more than 120 beds must employ a qualified social worker on a full-time basis." 42 C.F.R. § 483.15(g)(2). Defendant does

21

not allege that the nursing home at issue in this case had more than 120 beds.[7]  However, she does try to argue that all nursing homes must have a "qualified" social worker, regardless of the size of the nursing home.  This argument is without merit under the clear language of § 483.15.

When analyzing the meaning of a regulation, general rules of statutory construction apply. *See Metzger v. UNUM Life Ins. Co. of America*, 476 F.3d 1161, 1165 (10th Cir. 2007).  "It is a well established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls."  *Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir.1986)).

The plain language of 42 C.F.R. § 483.15(g)(2) only requires nursing homes to have a qualified social worker when the nursing home has more than 120 beds.  Also instructive, is the rule of statutory construction that provides "[w]hen Congress has the will it has no difficulty in expressing it", *United States v. Matais*, 673 F.2d 289 (10th Cir. 1982), and by analogy, when a regulatory authority has the will, it has no difficulty in expressing it.  In the instant case, the regulatory authority specifically expressed their will that nursing homes with more than 120 beds must have a qualified social worker.  If the regulatory authority had desired that all nursing homes, regardless of size, have qualified social workers, it could have so stated.  Under the aforementioned rules of statutory construction, the literal and unambiguous language of the regulation must control in this situation and only the provisions of 42 C.F.R. § 483.15(g)(1) apply, which does not require a "qualified" social worker but only requires the provision of sufficient social services.

Relator Bell admits that Defendant Buena Vista employed an individual to provide social

---

[7]The parties pleadings imply that the facility is not more than 120 beds.  See Relator's Resp. in Opposition to Motion to Dismiss 21-22; Defendants' Memorandum of Law in Support of Joint Motion to Dismiss Relator's Complaint 16.

services to residents of Buena Vista.  She only alleges that such services were not provided by a "licensed" social worker and she has set forth no allegations that the social services that were provided were not sufficient to "attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident."[8]

    As previously set forth, even under the deferential 12(b)(6) standard, the Court still may not assume that a plaintiff "can prove facts that [she] has not alleged."  *Associated General Contractors of California, Inc.*, 459 U.S. at 526.  Because Relator Bell has failed to set forth any allegation that could be construed as alleging that the social services provided by Buena Vista did not meet the requirements set forth in 42 C.F.R. § 483.15(g)(1), Count II of Relator Bell's Amended Complaint is hereby dismissed without prejudice.

III.    <u>Should Relator Bell's Amended Complaint be Dismissed Because it Fails to Provide Specific Information Required by Rule 9(b) of the Federal Rules of Civil Procedure</u>?

    Defendants argue that all three counts of Relator Bell's complaint should be dismissed because they fail to provide specific information about the alleged false claims as required by Rule 9(b) of the Federal Rules of Civil Procedure.  Generally, motions to dismiss for failure to state a claim are governed by Federal Rule of Civil Procedure 12(b)(6); however, claims for fraud are subject to the additional pleading requirements of Rule 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Rule 9(b)'s "heightened pleading requirements apply to actions under the FCA."  *Sikkenga*, 472 F.3d at 726 (10th Cir. 2006).

---

[8]Whether Defendants provided the adequate **social services** is a different issue of whether they provided adequate **health care services**, which Relator Bell does allege in Count III of her Amended Complaint.

"Liability under the FCA requires a false claim-a defendant's presentation of a false or fraudulent claim to the government is a central element of every False Claims Act case." *Id.* at 727.  In *Sikkenga*, the Tenth Circuit recently addressed what details a relator must allege when bringing an action under the FCA in order to satisfy the pleading requirements of Rule 9(b).  The relator in *Sikkenga*, like the relator in case, alleged that the defendant submitted claims to a Medicare agency despite the fact that the services provided by defendant did not conform to the requirements for submitting such claims.  In examining Relator Sikkenega's allegations, the Tenth Circuit found that her "complaint falls woefully short of adequately pleading that false or fraudulent claims were submitted . . . ." *Id.*  The Tenth Circuit set forth the following requirements that must be met in order to satisfy Rule 9(b) in a an FCA action:

> A relator must provide details that identify particular false claims for payment that were submitted to the government. In a case such as this, details concerning the dates of the claims, the content of the forms or the bills submitted, their identification numbers, the amount of money charged to the government, the particular goods and services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices are the types of information that may help a relator to state his or her claims with particularity. These details do not constitute a checklist of mandatory requirements that must be satisfied for each allegation included in a complaint. However, . . . we believe that some of this information, for at least some of the claims must be pleaded in order to satisfy Rule 9(b).

*Id.* at 727-28 (quoting *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 232-33 (1st Cir. 2004)).

Relator Bell has just barely met the requirements for Rule 9(b) as to some of her allegations in Count I.  In Count I of her Amended Complaint, Relator Bell alleges that Defendants Ghaffari P.A., Ali Ghaffari and Linda Ghaffari were submitting claims for physical

therapy performed by Plaintiff, even though they knew she was not a licensed physical therapist. Essentially, Defendants argue that the allegations in Count I fail under Rule 9(b) because they do not adequately identify particular false claims for payment.

On the bare face of her Amended Complaint Relator Bell does little more than simply alleges that "Defendant Ali Ghaffari . . . continued to submit claims for reimbursement under the Medicare and Medicaid programs" and does not provide any of the specificity regarding particular false claims required by *Sikkenga*.  Fortunately for Relator Bell, under Tenth Circuit precedent, this Court is allowed to review allegations within the complaint coupled with the documents listed in support of that claim to determine if she sufficiently satisfied Rule 9(b)'s requirements.  *See Tal v. Hogan*, 453 F.3d 1244, 1265 (10th Cir. 2006).  With this in mind, the Court examines Relator Bell's 2007 Affidavit, and attached exhibits to determine whether the requirements of 9(b) have been met as to Count I.

In her 2007 Affidavit, Relator Bell provides support for her claim that false claims were submitted where she states that "Exhibit 2 shows that a variety of charges were submitted to Medicare for physical therapy services by Dr. Ghaffari under the '97' heading.  Each of the charges listed on pages 1 through 13 of Exhibit 2 that contain the 97 prefix were for treatments that I had administered."  2007 Aff.,  ¶ 21.  She further alleges that these were "physical therapy" treatments that were required to be performed by a "licensed physical therapist" in order for the treatments to be eligible for reimbursement under Medicare and Medicaid.  2007 Aff. ¶¶ 10, 21. A review of Exhibit 2 shows that it is a "Medicare Remittance Notice" ("Remittance) addressed to Ali M. Ghaffari, M.D.  Among other things, it appears to provide the name of the patient for whom treatment was provided, the date of treatment, the amount billed for the treatment, the

amount allowed for the treatment, the deductible for the treatment, the coinsurance for the

treatment and the amount ultimately paid for the treatment.  This level of specificity in Exhibit 2

regarding individual claims is consistent with the requirements set forth in *Sikkenga*.

A document similar to Exhibit 2 is attached as Exhibit 5 to Relator Bell's 2007 Affidavit.

Relator Bell states that "Exhibit 5 is a portion of another healthcare remittance notice date 4-25-

00.  Pages 1 through 11 reflect charges by provider number 052826466 which I believe is the

Medicare and Medicaid provider number for the Buena Vista Nursing home.  Once again, a

number of the individuals listed on this Exhibit were treated by me."  2007 Aff., ¶ 22.  The

difference between the description of Exhibit 2 and Exhibit 5 is fatal as to the specificity required.

In reference to Exhibit 2, Relator Bell specifically identified each claim on the Exhibit that was

allegedly a false claim; specifically, she specifically identified all claims with the prefix 97.

However, as to Exhibit 5, Relator Bell simply makes a general statement that "a number of the

individuals listed on this Exhibit were treated by me."  This broad statement provides no basis for

determining which of the hundreds of claims in Exhibit 5 Relator Bell alleges is a false claim.

Therefore, Exhibit 5 does not provide the Rule 9(b) specificity required to save the allegations in

Count I.

On the other hand, Exhibit 4 does provide sufficient specificity.  In her 2007 Affidavit,

Relator Bell states that "Exhibit 4 is a portion of a Medicare Summary Notice that was sent by

Medicare to Linda Colmnares [sic].  I obtained a copy of this document from Linda Colmenares

[sic].  All of the alleged treatments listed on Exhibit 4 were performed by me."  2007 Aff.,  ¶ 21.

A review of Exhibit 4 indicates that it appears to be a "Medicare Summary Notice" ("Summary")

that was sent to Linda Colmenares at Buena Vista Retirement Center."  The Summary provides

26

claim numbers, a description of services provided, dates that services were provided and seems to

indicate that such services were provided by Ali M. Ghaffari, M.D.  The Summary also lists the

amount charged for services, the amount approved by Medicare, and the amount Medicare paid to

the provider.  The Court finds that Exhibit 4 sets forth the level of specificity regarding individual

claims that is consistent with the requirements of Rule 9(b) and *Sikkenga*.

None of the other portions of Relator Bell's affidavit or her exhibits support the

allegations in Relator Bell's Count I with the degree of specificity sufficient to satisfy Rule 9(b)' s

requirements.

Therefore, the Court concludes that fraud has been sufficiently pled as to those claims

evidenced by Exhibit 2 that contain the 97 prefix and all of those claims identified in Exhibit 4.

However, the Court finds that the sufficiency of pleading is narrowly limited to these claims.  To

the extent that Relator Bell is pursuing other claims in Count I, they have not been sufficiently

pled and are dismissed without prejudice.

As for Counts II and III of her Amended Complaint, Relator Bell has completely failed to

"identify particular false claims" in support of her allegations set forth in these claims. She has

failed to provide the type of detailed information required by the Tenth Circuit holding in

*Sikkenga*.  For example, in Count II she simply alleges that "Defendants billed Medicare and

Medicaid for social worker services which were allegedly provided at the Buena Vista Retirement

Center by an employee of Buena Vista;" and, in Count III she alleges that "Defendants Buena

Vista and Buena Vista Health Care submitted claims to Medicare and Medicaid for nursing home

services provided to these patients" despite not having provided minimally adequate care.  Relator

Bell's Amended Complaint ¶¶ 41, 42, 44.  These allegations do not "identify particular false

claims for payment that were submitted to the government." Rather, they constitute broad conclusory statements about the submission of false claims. Since "a defendant's presentation of a false or fraudulent claim to the government is a central element of every False Claims Act case" the conclusory allegations advanced by Relator Bell in this case do not satisfy the pleading requirements of Rule 9(b). *Sikkenga*, 472 F.3d at 727. A review of Relator Bell's affidavits and other documents that she provided in support her claims do not provide any additional specificity regarding the submission of false claims in Counts II and III. Therefore, even if Count II had not been previously dismissed for failure to state a claim, it would be dismissed without prejudice at this point in the analysis. As for Count III, the Court now dismisses without prejudice this Count in its entirety.

**IV.      Statute of Limitations**

As to the claims not already dismissed or disposed of by summary judgment, the Court will now address Defendants' statute of limitations argument. Defendants argue that Relator Bell's claims prior to November 2, 1995 are barred by the statute of limitations. At this point, the Court has disposed of Counts II and III of Relator Bell's Amended complaint. **The only remaining claims are those set forth in Count I that are specified by Exhibit 2 and contain the 97 prefix, and all of those claims identified in Exhibit 4. All of** these remaining claims appear to rise out of services provided by Defendants after November 2, 1995. Therefore, Defendants' statute of limitations argument is moot at this time.

## CONCLUSION

This Court's jurisdiction to consider Counts II and III of Relator Bell's Amended Complaint is governed by § 3730(e)(4)(A) of the False Claims Act.  This Court has determined that, as to Counts II and III, there have been prior relevant public disclosures that contain allegations or transactions from one of the listed sources; that such disclosures have been made "public" within the meaning of the False Claims Act; and Relator Bell's Amended Complaint is "based upon" these public disclosures.  This Court has also found that Relator Bell can only establish that she is an original source for conduct that occurred during her employment and this Court only has jurisdiction over Counts II and III of Relator Bell's Complaint to the extent that these Counts set forth allegations of activity that occurred during the time of her employment. Therefore, summary judgement shall enter against Relator Bell and in favor of Defendants as to the balance of the allegations in Counts II and III, which the Court does not have jurisdiction to consider.

This Court also finds that Count II of Relator Bell's Amended Complaint should be dismissed without prejudice in its entirety as Relator Bell has failed to set forth any allegation that could be construed as alleging that the social services provided by Buena Vista did not meet the requirements set forth in 42 C.F.R. § 483.15(g)(1); therefore, Relator Bell has failed to state a colorable claim in Count II.

As to the specificity with which Relator Bell pled her claims, this Court finds that pursuant to Rule 9(b), fraud has been sufficiently pled as to those claims evidenced by Exhibit 2 of Relator Bell's 2007 Affidavit that contain the 97 prefix, and all of those claims identified in Exhibit 4. However, the Court finds that the sufficiency of pleading in Count I is narrowly limited to these

claims.  To the extent that Relator Bell is pursuing other claims in Count I, they have not been sufficiently pled and are dismissed without prejudice.  This Court also finds that none of the claims in Counts II and III of Relator Bell's Amended Complaint have been pled with the specificity required by Rule 9(b); therefore, all of these claims shall be dismissed without prejudice.

Finally, as for Defendants' argument that Relator Bell's claims prior to November 2, 1995 are barred by the statute of limitations, the only remaining claims are those set forth in Count I that are specified by Exhibit 2 and contain the 97 prefix, and all of those claims identified in Exhibit 4.  All of these remaining claims appear to arise out of services provided by Defendants after November 2, 1995.  Therefore, Defendants' statute of limitations argument is moot at this time.

**IT IS THEREFORE ORDERED** that Count I of Relator Bell's Amended Complaint shall be **DISMISSED WITHOUT PREJUDICE**, except to the extent Count I alleges claims supported by Exhibit 2 of Relator Bell's 2007 Affidavit that contain the 97 prefix, and all of those claims identified in Exhibit 4 of Relator Bell's 2007 Affidavit.  **SUMMARY JUDGMENT** shall enter against Relator Bell and in favor of Defendants as to those allegations in Count II and III that involve activities that did not occur during the time of her employment.  Those claims in Counts II and III that survive summary judgment are **DISMISSED WITHOUT PREJUDICE** under Rules 12(b)(6) and 9(b).

Dated this 30th day of March, 2007.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorneys for the United States *ex rel*. Dalisa Bell
Duff H. Westbrook
Howard R. Thomas
Randy J. Knudson
Maureen Sanders

Attorneys for Defendants
Emil J Kiehne
John J. Kelly
Lalita Devarakonda
Mark C. Dow